FILED & JUDGMENT ENTERED
Steven T. Salata

May 08 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

IN RE:

BARON DEAN THROWER and
KIMBERLY HILL THROWER,

Debtors.

Bankruptcy No. 14-30265
(Chapter 7)

**ORDER**

**THIS MATTER** came before this court on 1) the Trustee's Motion for Turnover, filed March 28, 2014, 2) the Debtors' Application to Remove the Trustee, filed March 28, 2014, and 3) the Debtors' Motions to Dismiss the Bankruptcy Case and Stay Proceedings, filed on April 4, 2014 and April 17, 2014. A hearing on the Motions was held on April 17, 2014. Rick Mitchell appeared on behalf of the Trustee and the Debtors, (the "Throwers") appeared on behalf of themselves.

Based on the foregoing, the Motion to Remove the Trustee is **DENIED**, the Motions to Dismiss are **DENIED**, and the Motion for Turnover is **GRANTED** in part and **SETTLED** in part.

**Facts and Procedural History**

The Throwers filed a Chapter 7 bankruptcy petition in this Court on February 20, 2014. Rick Mitchell was appointed as the Chapter 7 Trustee for their estate. The same day the Throwers filed bankruptcy, Mitchell's office forwarded to the Throwers at their home address of 11204 Waightstill Way, Charlotte North Carolina, a letter requesting several documents prior to the 341 Meeting of Creditors, held on March 26, 2014. The Debtors did not respond to this request.

A. The Vehicles

On the date of filing, the Throwers owned three motor vehicles; these being a 2003 Cadillac CTS valued at $4,400, a 2008 Cadillac Escalade valued at $17,000, and a 2003 Cadillac Escalade valued at $8,100 in their schedules. (the "Vehicles"). As to the 2008 Escalade, Kelly Blue Book lists the retail value of a vehicle such as this at over $25,000. None of these vehicles are subject to liens.

The Throwers made claims for exemptions in all three vehicles; however, each of those claims are improper to some extent. In the Statement of Affairs, the Throwers showed in Question Number 14, Property held for another person, that they owned the 2003 Cadillac Escalade but that it was their son's automobile. The Trustee questioned this assertion at the §341 hearing and was told that Mr. Thrower gave this vehicle to his son in 2011. However, the 2003 Escalade, as well as the other vehicles, were titled in Mr. Thrower's name. In a letter written by the Trustee to the Throwers on March 26, 2014, the Trustee explained how vehicle exemptions operated and explained how the son could attempt to establish a claim of ownership under North Carolina law. No such effort was made.

2

**B. The Home**

The Throwers are the owners of a home located at 11204 Waightstill Way, Charlotte, North Carolina which they have valued in their schedules at $671,235 (the "Home"). The Home is located in the Ballantyne area of Charlotte, North Carolina and contains 4,962 square feet of living space. On Schedule B, the Throwers listed household goods of $2,500 and "misc. music CD's, DVD's movies, books Misc. brass figurines, reprint pictures" at $2,250.

In view of the fact that the value stated for the Furniture and Furnishings appears to be grossly below what one would expect in a home the size of the Throwers, the Trustee requested an inspection of the home on March 27, 2014, the day after the 341 meeting. Mr. Thrower responded that the Trustee could view the home on April 15, 2014 at 3:00 o'clock p.m.

Having encountered resistance from the pro se debtors to his prior requests and at the 341 meeting, and fearing that the extended delay might be intended to give the Throwers time to dispose of the furniture and furnishings, the Trustee immediately filed a Motion for an Emergency Hearing, Order Authorizing a Site Visit, and an Order to Turnover Autos. Turnover of the automobiles was sought because each had potential nonexempt equity based on way the Debtors claimed their exemptions. The Throwers had also continued to use these vehicles during the five weeks they had been in bankruptcy, thereby putting that value at risk.

The Emergency Hearing was held on Wednesday April 2, 2014. It was then agreed that the Throwers would turnover insurance documents of the vehicles to the Trustee and that the vehicles would be parked. It was also agreed that the Trustee would visit the Throwers' residence that Friday, April 4, 2014.

3

C. **The Debtors' Motions**

The same day the Trustee filed his Motion for an Emergency Hearing, the Throwers filed an Application to Remove the Trustee. This motion alleges that the Trustee made an unsubstantiated claim of a "fraudulent transfer" at the 341 Meeting and later made punitive statements to the Debtors through e-mail. The Throwers felt that this constituted "egregious conduct" such that Mitchell should be removed.

Then, on April 4, 2014, the Throwers filed their first Motion to Dismiss their case, pursuant to 11 U.S.C. §521(e)(2)(B)(i). 11 U.S.C. §521(e)(2)(A)(i) requires a Debtor to provide to the Trustee a copy of their most recent tax return not later than seven days before the date set for the first meeting of creditors. 11 U.S.C. §521(e)(2)(B) states that the court shall dismiss the case if the Debtor fails to comply with that requirement unless the debtor demonstrates that the failure to comply is due to circumstances beyond the control of the Debtor. Here, the Throwers allege that they understood the requirement to provide tax returns, could have provided the returns, but chose not to, in order that their case be dismissed. The motivation for this motion was the Thrower's realization that they would be losing property to the Trustee.

The Debtors filed a second Motion to Dismiss on April 17, 2014 pursuant to 11 U.S.C. §521(a)(1)(B)(iv), Failure to Submit Copies of Employer Payment Advices or other Evidence of Payment within forty-five days after the filing of the petition. Once again, Throwers allege that they understood the requirement to provide payment advices, could have provided the advices, but chose not to, in order to force a dismissal of the case.

4

**Discussion**

**I. The Motion to Remove the Trustee is DENIED.**

The Throwers' desire to remove the Trustee is based on their being offended at what the Trustee has said to them and also to his interest in their assets. In this, they seem to view the Trustee as their counsel. That viewpoint is erroneous. The Trustee does not work for a debtor. He is a representative of creditors and the bankruptcy system itself. A Chapter 7 trustee often holds adverse interests to a Debtor. As such, the Trustee cannot be removed simply because the Debtors seek removal.

The Throwers' Motion essentially maintains that because the Trustee did not agree with their views of the law, the procedures that should be followed or the timeframe, that he should be removed. The Trustee is not required to agree with Debtors. People routinely disagree with each other in bankruptcy courts and every other type of court. Hurt feelings is not a legally founded reason to seek removal of the Trustee.

Furthermore, based on the circumstances, the Trustee was not being insulting when he described the situation with the vehicles as "at best, a fraudulent transfer." He was simply stating a legal position. On the schedules, the Throwers listed a vehicle in their son's name. However, at the 341 Meeting, Mr. Thrower explained that the vehicle was titled in his name but that his son was using it. He considered it his son's car because he gave it to him as a graduation gift. Legally, because the vehicle was titled in Mr. Thrower's name at the petition date, it remained his property. *See* N.C.G.S. §20-72. However, to the extent that Mr. Thrower had transferred the interest in the vehicles pre-petition, it could be considered a fraudulent transfer. As explained above, the Trustee was just stating his position, not insulting the Throwers. This interaction does not merit removal of the Trustee.

In sum, the court is unaware of any authority that would support the removal of the Trustee under these facts. As such, the Motion is **DENIED**.

**II. The Motions to Dismiss are DENIED.**

There is no automatic right to dismissal under Chapter 7. Under 11 U.S.C. §707, to voluntarily dismiss a case, a debtor must make a showing of cause and demonstrate why a dismissal is justified. *See Terry v. Sparrow*, 328 B.R. 450, 455 (E.D.N.C. 2005). A Chapter 7 debtor has no absolute right to dismissal of his or her case, and the motion to dismiss should be denied if the dismissal would result in prejudice to the creditors. *Id.*; *See also In re Watkins,* 229 B.R. 907, 909 (Bankr. N.D. Ill. 1999); *In re Klein,* 39 B.R. 530, 532 (Bankr.E.D.N.Y.1984); *Turpen v. Eide (In re Turpen),* 244 B.R. 431, 434 (8th Cir. BAP 2000).

**A. The Court Has Discretion to Deny Dismissal under §521 when it is Necessary to Avoid Abuse by the Debtor.**

The Throwers moved to dismiss their case under relatively new provisions of the Bankruptcy Code which require Debtors to provide tax information to the Trustee prior to the 341 Meeting of Creditors and provide employer payment advices within forty-five days of filing the petition. *See* 11 U.S.C. §521(e)(2)(A)(i) and U.S.C. §521(a)(1)(B)(iv).

These sections say what they say: the case must be dismissed if the Debtor fails to comply with these duties. This is very dramatic language and this is a poorly drafted statute that is intended to compel debtors to timely provide documents to the trustee and to creditors. These provisions presume that a debtor wants to be in Chapter 7 and that creditors prefer that he or she not be. This is often not the case.

11 U.S.C. §521 has to be reconciled with 11 U.S.C. §707. None of the duties in §521 are designed to provide debtors with an escape hatch to "purposely avoid the requirements of the

6

Bankruptcy Code at the expense of creditors." *In re Bliek*, 456 B.R. 241, 245 (Bankr. D. S.C. 2011). It couldn't be that way.

Consequently, at least two Circuits and several bankruptcy courts have come to the conclusion that bankruptcy courts have discretion to deny dismissal under §521, particularly when necessary to avoid abuse by the Debtor. *See Wirum v. Warren (In re Warren),* 568 F.3d 1113 (9th Cir. 2009) (holding that to rule otherwise would allow "abusive and manipulative debtors to gain an automatic dismissal and thereby encourage bankruptcy abuse"); *Segarra–Miranda v. Acosta–Rivera (In re Acosta–Rivera),* 557 F.3d 8 (1st Cir. 2009) (holding that requiring automatic dismissal at the Debtors' request under §521 would encourage rather than discourage bankruptcy abuse).

It would be perverse to hold that a debtor who has statutory duties as described §521 could ignore those duties purposely in order to obtain a dismissal when the duties extend in favor of his/her creditors. This interpretation effectively would allow, in cases such as this one where the Trustee discovers non-exempt assets, debtors to dismiss the case, go home, and retain those assets. Alternately, in involuntary cases filed by the creditors of the debtor, the Debtors' interpretation would allow involuntary debtors to undo what the Code otherwise expressly allows by simply failing to file documents.

### B. Dismissing the Case is not in the Best Interest of Creditors.

In addition to being unable to seek dismissal under §521, the Throwers have not met their burden to obtain a voluntary dismissal under 11 U.S.C. §707(a) in that they have not shown just cause or that dismissal is in the best interest of the creditors.

The Throwers argue that dismissing the case would not prejudice their creditors because state court remedies exist. While state court remedies do exist, to prevail under §707, the

Throwers would have to show that those remedies are superior to the present Chapter 7 case. In this instance, the Throwers pointed out one unsecured creditor, maybe two, and one secured creditor that might have other recourse. This simply isn't enough. The Throwers cannot show that going to State Court provides a superior remedy to all creditors than having the Trustee administer an asset case, which this one appears to be.

Based on the foregoing, it would not be in the best interest of the creditors to dismiss the case. Therefore, the Motions are **DENIED**.

### III. The Motion for Turnover is GRANTED in part and SETTLED in part.

Under North Carolina General Statute §1601(a)(3), an individual debtor may exempt up to $3,500 of value in one vehicle. However, only the record owner of the vehicle may claim the exemption.

In this case, the Throwers attempted to claim §1601(a)(3) exemptions in all three vehicles, which is improper. With regard to the 2003 Escalade, the Throwers stated that they were holding this vehicle for their son. While Mr. Thrower may have felt that he gave his son the car as a graduation gift, legally, the car still belongs to him since it is titled in his name. It is the same situation with the 2003 CTS. While the Throwers consider this to be Mrs. Thrower's vehicle, it too is titled in Mr. Thrower's name. A Debtor may only exempt what he or she owns. Mr. Thrower, as the owner, is the only debtor who many claim an exemption in any of these vehicles.

All three of the vehicles are property of the bankruptcy estate save and except what the Throwers may exempt. Under the clear wording of the North Carolina statute, Mr. Thrower is only entitled to exempt one vehicle, and only $3,500 worth of that vehicle. Under 11 U.S.C.

§542, the Trustee would be entitled to turnover of the remaining vehicles and any non-exempt equity from the vehicle the Throwers wish to keep.

At the hearing on April 17, 2014, the Trustee made the Throwers a generous offer. The Trustee was willing to allow the Throwers to keep the 2003 Cadillac Escalade under Mr. Thrower's exemption, and finance the 2008 Cadillac CTS with payments of $200 a month for ten (10) months. Since the 2008 Cadillac Escalade is entirely non-exempt, it would be turned over to the Trustee and sold. The Debtors accepted this offer.

Therefore, the Motion for Turnover is **GRANTED** as to the 2008 Cadillac Escalade and **SETTLED** as to the 2003 Cadillac Escalade and to the 2003 Cadillac CTS. The Debtors shall make payments to the Trustee in the amount of $200 a month, for 10 months, beginning May 1, 2014. Should the Debtors default on any payments to the Trustee within 10 days, the 2008 Cadillac CTS may be picked up by the Trustee's auctioneer.

**SO ORDERED.**

**This Order has been signed electronically.**  **United States Bankruptcy Court**
**The judge's signature and the court's seal**
**appear at the top of the Order.**

9